UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAURIEANN M., | |
|                Plaintiff, | CASE NO. 3:18-cv-05509-RBL-JRC |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, | NOTING DATE: March 11, 2019 |
|                Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261, 271–72 (1976). This matter has been fully briefed. *See* Dkt. 10, 11, 12.

Following a car accident, plaintiff alleged disability on the basis of a neck injury and post-traumatic stress disorder ("PTSD"). This Court finds that the ALJ did not commit harmful

1  legal error when she found that plaintiff was not disabled.  Although plaintiff argues that the ALJ

2  erred in some regards when evaluating plaintiff's credibility, the ALJ's ultimate credibility

3  finding remains valid because the ALJ properly found that plaintiff's inconsistent testimony

4  about how much she worked and about her treatment undermined her credibility.  The ALJ also

5  properly rejected a treating physician's after-the-fact assessment of limitations, which relied on

6  plaintiff's self-reports.  Although the ALJ failed to explicitly consider neck spasms at step 2, the

7  error is harmless because the ALJ evaluated neck spasms when determining plaintiff's residual

8  functional capacity ("RFC").  Finally, although the ALJ did not incorporate into the RFC a

9  limitation about absenteeism or being off-task, this was not error because no provider opined that

10  plaintiff suffered from such a limitation caused by her tearful affect.  Thus, after considering the

11  record, this Court recommends that the matter be affirmed.

12

13                                          FACTS

14        In January 2015, plaintiff applied for disability insurance benefits under 42 U.S.C. § 423

15  (Title II) and supplemental security income benefits under 42 U.S.C. § 1382(a) (Title XVI) of the

16  Social Security Act.  *See* AR. 15.  Plaintiff's highest level of education was one year of college.

17  *See* AR. 264.  She alleged that she had worked as a "horse trainer promoter" until August 2014,

18  when a neck injury and PTSD prevented her from continuing to work.  AR. 263.  She was 52

19  years old at the time.  *See* AR. 281.  The Administration denied her applications initially and

20  following reconsideration.  AR. 15.

21        Plaintiff had a hearing before Administrative Law Judge Kelly Wilson (the "ALJ") and

22  amended her alleged onset date to June 2014.  AR. 15.  In May 2017, the ALJ entered her written

23

24

1    decision, finding that plaintiff's date last insured was in December 2014 and that she was not

2    disabled during the relevant period. *See* AR. 15, 32. At step 2, the ALJ found that plaintiff had

3    at least the severe impairments of degenerative disc disease, obesity, and carpal tunnel syndrome.

4    AR. 18.

5         The Appeals Council denied plaintiff's request for review. AR. 1. Plaintiff then filed a

6    complaint for judicial review of the ALJ's decision in this Court. *See* Dkt. 4.

7

8    DISCUSSION

9    **I. Standard of Review**

10        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

11   social security benefits if the ALJ's findings are based on legal error or not supported by

12   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

13   Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

14   **II. Credibility**

15        The parties dispute whether the ALJ properly found plaintiff's testimony not credible on

16   the basis that it was inconsistent with the following: (1) her daily activities; (2) the objective

17   medical evidence; and (3) her failure to follow treatment. *See* Dkt. 11, at 7–9; Dkt. 12, at 2–5.

18   Unaddressed by the parties, however, are the ALJ's findings that plaintiff's testimony about her

19   earnings was "markedly inconsistent" and that her statements about efficacy of treatment were

20   inconsistent in some regards. *See* AR. 28. So long as there remains substantial evidence to

21   support the ALJ's conclusion on credibility and errors do not negate the validity of the ALJ's

22   ultimate credibility conclusion, the errors are deemed harmless and the ALJ's credibility finding

23

24

1   should be upheld.  *See Carmickle v. Cmm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008).  Here, the

2   ALJ's findings that plaintiff testified inconsistently about her earnings and the efficacy of

3   treatment in some regards are independent, valid reasons that support the ALJ's ultimate

4   credibility conclusion.  Because these findings are dispositive, the Court addresses them first.

5                      *A.  Legal Principles*

6          Unless an ALJ finds that a plaintiff is malingering, the ALJ may reject the plaintiff's

7   testimony about the severity of her symptoms only if the ALJ makes specific findings stating

8   reasons that are clear, convincing, and supported by substantial evidence.  *See Robbins v. Soc.*

9   *Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting *Smolen v. Chater*, 80 F.3d 1281, 1283–

10  84 (9th Cir. 1996)).  An ALJ is entitled to use "ordinary techniques of credibility evaluation"

11  when evaluating plaintiff's symptom testimony, such as whether "other testimony" "appears less

12  than candid[.]"  *Smolen*, 80 F.3d at 1284.

13                 *B.  Inconsistent Earnings and Treatment Testimony*

14         The ALJ found that plaintiff had testified that she spent only one hour weekly training

15  horses, earning $60 each week.  AR. 43, 45.  The ALJ also noted plaintiff's testimony that she

16  sometimes sold refurbished furniture.  *See* AR. 28.  However, plaintiff had not done so for at

17  least three months, since she had sold one piece of furniture for $60.  AR. 44.  The ALJ found

18  this testimony "markedly inconsistent" with plaintiff's other hearing testimony that she had

19  earned "about [$]12,000" in 2015 and expected to earn the same in 2016.  AR. 28, 45.

20         This Court agrees with the ALJ that the disparity in plaintiff's testimony about her

21  earnings undermines the reliability of her testimony as a whole and supports that she under-

22  reported the amount of work that she was able to do every week.  Such an inconsistency

23

24

1    reasonably calls into question all of plaintiff's testimony, as it suggests that plaintiff minimized

2    the amount that she was able to work, in an effort to improve her likelihood of obtaining

3    benefits.  As such, this inconsistency was a clear and convincing reason to find plaintiff's

4    testimony not credible.

5           The ALJ also properly relied on inconsistencies in plaintiff's statements about the

6    efficacy of treatment as a reason to find plaintiff's testimony not credible.  Plaintiff

7    inconsistently reported at the hearing that "TENS" treatment provided only about five minutes'

8    relief from her pain (AR. 53); however, she told a provider that "TENS" treatment relieved her

9    pain but that she did not like to drive to the appointments.  *See* AR. 359.  And although plaintiff

10   claimed that she showed up to a sleep study but had to leave (AR. 70–71), a provider's note

11   contradicts this testimony and states that plaintiff never showed up to any of her scheduled sleep

12   studies.  *See* AR. 317.  These inconsistencies in plaintiff's testimony were clear and convincing

13   reasons to find her account of her symptoms' severity not credible.

14                  *C.  Plaintiff's Arguments and Harmless Error*

15          The Court notes that plaintiff claims that certain other credibility findings, relating to

16   daily activities, objective medical evidence, and failure to follow treatment, were erroneous.  *See*

17   Dkt. 11, at 7–9.  Nevertheless, the Court does not consider those issues because any error in

18   these regards was harmless.

19          Error in evaluating a plaintiff's testimony is harmless if "there remains 'substantial

20   evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the

21   validity of the ALJ's ultimate [credibility] conclusion[.]'"  *Carmickle*, 533 F.3d at 1162 (quoting

22   *Batson v. Cmm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004)).  This Court does not analyze whether

23

24

1  the ALJ would have made a different decision absent any error but looks to "whether the ALJ's

2  decision remains legally valid, despite such error." *Id.*

3       Here, the ALJ's decision finding plaintiff less than fully credible remains valid, despite

4  any other errors plaintiff has identified.  The ALJ found that plaintiff was not credible because

5  she was misrepresenting either her earnings or the amount that she worked—a significant

6  misrepresentation that the ALJ validly found called into question the reliability of plaintiff's

7  testimony as a whole.  *See* AR. 28.  The ALJ also properly found that plaintiff's testimony about

8  her treatment was inconsistent in two regards, again supporting that plaintiff's testimony was, as

9  a whole, not reliable.  Thus there remains substantial evidence supporting the ALJ's conclusion

10  on credibility, and any other errors raised by plaintiff do not otherwise negate the validity of the

11  ALJ's ultimate credibility conclusion.  *See Carmickle*, 533 F.3d at 1162.

12       **III.  Dr. Julian's Opinion**

13       Plaintiff argues that the ALJ failed to give specific, legitimate reasons for rejecting

14  plaintiff's treating physician's opinion that plaintiff suffered from "severe cervical paraspinal

15  muscle spasm[s]" during the relevant period.  Dkt. 10, at 3; AR. 847.

16       In December 2016, plaintiff's treating physician, Christina Julian, M.D., completed a

17  "request for medical opinion" provided by plaintiff, indicating that Dr. Julian had provided a

18  series of injections to reduce plaintiff's cervical muscle spasms, beginning in November 2016.

19  AR. 864, 865 (emphasis removed).  According to Dr. Julian, plaintiff's injury limited her to less

20  than half-time work.  *See* AR. 865.  Dr. Julian wrote that plaintiff was not able to perform full-

21  time work at even a sedentary level since June 2014 because,

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 6

1     severe muscle spasms and cervical dystonia can cause debilitating pain making it
difficult to drive and perform jobs which require head [and] neck movement.  With
2     the severity of her pain since I have seen her as a patient, I believe that her condition
would cause her to miss work [3 or more] days [per] month.
3   AR. 866.

4        In contrast, an examining neurologist had found in 2014 that plaintiff did not necessarily

5   need to be restricted from work (AR. 336), and doctors who reviewed plaintiff's application for

6   the Administration opined that she could complete light work.  *See*, *e.g.*, AR. 97.  Because other

7   doctors' opinions conflicted with Dr. Julian's assessment of the severity of plaintiff's limitations

8   caused by neck spasms, this Court reviews the ALJ's decision to give "little weight" to Dr.

9   Julian's opinion for whether the ALJ provided specific and legitimate reasons, supported by

10   substantial evidence.  *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

11        The ALJ rejected Dr. Julian's opinion because it necessarily relied on plaintiff's self-

12   reports, alone, for most of the period since June 2014 because Dr. Julian did not examine

13   plaintiff before November 2016.  *See* AR. 30.  This is a proper basis to reject a doctor's opinion

14   where, as here, the opinion is primarily based on plaintiff's self-reports and the ALJ has properly

15   found plaintiff to be not credible.  *See Bray v. Cmm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009).

16        Plaintiff argues that the ALJ overlooked that Dr. Julian based her opinion on objective

17   evidence—a May 2016 MRI and Dr. Julian's examination in which she observed spasms.  Dkt.

18   10, at 3; *see* AR. 865.  However, both the MRI and the examination occurred in 2016,

19   approximately two years after the alleged onset date, which supports the ALJ's finding that Dr.

20   Julian's opinion, insofar as it dealt with plaintiff's symptoms during the relevant period, relied on

21   plaintiff's self-reports.

22

23

24

1    Plaintiff also argues that the ALJ overlooked that Dr. Julian relied on a 2014 MRI, but no

2    2014 MRI is referenced in Dr. Julian's treatment notes.  *See* AR. 525–26, 847–63.  Rather,

3    plaintiff's letter to Dr. Julian requesting her medical opinion drew a treatment referencing the

4    MRI to Dr. Julian's attention, and Dr. Julian wrote that "[m]uscle spasms do not show up on

5    imaging" and referenced her physical examination of plaintiff.  AR. 865.  Dr. Julian did not

6    review the MRI imaging as part of rendering her opinion.  *See* AR. 865.  Thus plaintiff fails to

7    point to evidence that Dr. Julian based her opinion about plaintiff's limitations during the

8    relevant period on anything other than plaintiff's self-reports.

9    As discussed above regarding the ALJ's evaluation of plaintiff's credibility, the ultimate

10   credibility conclusion remains valid because the ALJ provided at least one good reason for such

11   a finding.  Similarly, because substantial evidence supports the ALJ's finding that Dr. Julian's

12   opinion about plaintiff's symptoms during the period at issue relied on plaintiff's self-reports,

13   this was a legitimate reason to discredit Dr. Julian's opinion.  Although plaintiff argues that the

14   ALJ erred when she discredited Dr. Julian's opinion on the basis that it was not intended to cover

15   the period at issue, the ALJ's alternative reasoning that Dr. Julian's opinion about the period

16   before 2016 relied on plaintiff's self-reports was, as discussed above, a legitimate reason to

17   discredit Dr. Julian's opinion in its entirety.  Accordingly, the error was harmless.  *See Molina v.*

18   *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

19   **IV.  Step 2:  Muscle Spasms Not Severe**

20   Plaintiff also appears to argue that the ALJ erred by failing to find, at step 2, that

21   plaintiff's muscle spasms were a severe impairment, on the basis of plaintiff's testimony and the

22   opinion of Dr. Julian.  *See* Dkt. 10, at 3.  This Court agrees with plaintiff that the ALJ erred in

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 8

this regard. *See* AR. 18–22. However, the error was harmless because the ALJ provided a lengthy discussion of the evidence of plaintiff's neck pain and spasms later in her decision, ultimately finding plaintiff's testimony about her symptoms' severity not credible and giving little weight to Dr. Julian's opinion that plaintiff's neck pain rendered her unable to work. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

### V.  Labile Mood

Plaintiff argues that the ALJ should have incorporated into the RFC a limitation that plaintiff would be off-task and absent for indeterminate amounts of time, based on her labile mood. *See* Dkt. 10, at 2. Plaintiff points to evidence that she presented as tearful at various examinations. *See* AR. 320, 329, 354, 502, 527. In formulating the RFC, an ALJ will consider all medical source statements, as well as descriptions and observations of limitations from a plaintiff or other persons. *See* 20 C.F.R. § 404.1545(a)(3). Here, however, none of the providers who documented that plaintiff appeared tearful opined that plaintiff had limitations to her ability to remain on-task or to attend work without absenteeism. *See* AR. 321, 329, 356, 502, 529. As such, plaintiff fails to show that the ALJ erred by not incorporating any such limitation.

CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Deputy Commissioner for further proceedings consistent with this Report and Recommendation. **JUDGMENT** should be for **defendant**, and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

1   6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

2   review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit

3   imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 11,

4   2019, as noted in the caption.

5            Dated this 25th day of February, 2019.

6

7

8            J. Richard Creatura
             United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24